**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patricia Barbara Perkins Vericker,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-20-01002-PHX-DJH<br><br>**ORDER** |

Plaintiff seeks judicial review of the Social Security Administration ("SSA") Commissioner's decision denying her application for SSA disability benefits. On September 22, 2020, the Court received a certified copy of the Administrative Record ("R."). Plaintiff filed her Opening Brief (Doc. 16) on January 21, 2021. Defendant filed a Response Brief (Doc. 19) on April 7, 2021, and Plaintiff filed her Reply Brief (Doc. 22) on May 6, 2021.

**I.    Background**

On July 27, 2016, Plaintiff applied for disability and disability insurance benefits with an onset date of March 19, 2014. (R. at 10). On January 25, 2019, an Administrative Law Judge ("ALJ") issued an unfavorable decision. (R. at 21). The Appeals Council denied Plaintiff's request for review. (R. at 1). This appeal followed.

Plaintiff claims several conditions that limit her ability to work including fibromyalgia, spinal stenosis, arthritis, irritable bowel syndrome, eczema, pain, fatigue, insomnia, depression, anxiety, and memory and concentration issues. (R. at 199). Upon

reviewing the record, the ALJ found plaintiff suffered from the following severe impairments: degenerative disc disease, osteoarthritis, and fibromyalgia. (R. at 13). The ALJ also found that Plaintiff's irritable bowel syndrome and eczema were non-severe as the record did not show they inhibited Plaintiff's ability to perform basic work. (*Id.*) As for Plaintiff's pain, fatigue, insomnia, memory issues, and concentration issues, the ALJ found these were symptoms, rather than medically determinable impairments. (*Id.*) Finally, the ALJ found that the record contained no diagnosed mental health conditions, and so he concluded the alleged mental impairments were non-medically determinable. (*Id.*)

Ultimately, the ALJ found that Plaintiff retained the residual functional capacity to "perform fulltime work at a sedentary exertional level." (R. at 20). The ALJ came to this conclusion based upon medical evidence showing a positive response to treatment, three supporting medical opinions, and Plaintiff's reported daily activities, which included babysitting. (R. at 18).

**II.     Standard of Review**

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ

typically follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**III. Discussion**

Plaintiff raises two issues. First, whether the ALJ erred in weighting certain medical opinions. (Doc. 16 at 13). Second, whether the ALJ erred in rejecting Plaintiff's own symptom testimony. (*Id.* at 19).

**a. Medical Opinions**

Plaintiff argues the ALJ improperly weighted the opinions of various treating and non-treating physicians. (Doc. 16 at 13). Generally, an ALJ weights a treating physician's opinion more heavily than a non-treating physician's opinion. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). However, "[a]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (cleaned up). "When faced with contradictory opinions, the ALJ must give specific and legitimate reasons supported by substantial evidence in the record to reject a treating

physician's opinion." *Belanger v. Berryhill*, 685 F. App'x 596, 598 (9th Cir. 2017). "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

>    i.    Dr. Bebak

Plaintiff's primary care physician, Dr. Sandra Bebak, opined that Plaintiff's impairments precluded an eight-hour workday. (R. at 762). Even though Dr. Bebak is a treating physician, the ALJ gave her opinion limited weight because it was "not fully supported by the medical evidence of record and the claimant's role as primary caregiver for her granddaughter suggests greater functioning." (R. at 19). Plaintiff argues this was an error for three reasons.

First, Plaintiff argues that the ALJ "only gave *his opinion* about congruence between the treating physician's opinion and the medical record." (Doc. 16 at 14) (original emphasis). But this is only natural. The ALJ is *required* to "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725. It is not the case, as Plaintiff implies, that ALJs are barred from opining on medical evidence. They certainly can, so long as they support their conclusion with "comprehensive, specific, and legitimate findings." *Leusch v. Berryhill*, 358 F. Supp. 3d 896, 906 (D. Ariz. 2019).

Second, Plaintiff argues that the ALJ failed to provide any specific citations to support his decision. (Doc. 16 at 15). Certainly, in the paragraph where the ALJ assigned limited weight to Dr. Bebak's opinion, the ALJ only cited Dr. Bebak's opinion. (R. at 19). However, the preceding five pages detail Plaintiff's medical history and provide many citations to the Record showing Plaintiff could perform a range of sedentary work. (*See e.g.*, R. at 18) ("While the record shows regular and consistent treatment of her conditions, particularly after 2016, the medical evidence of record shows frequently good responses to treatment and the claimant's musculoskeletal pain appears to be concentrated in the lower back and lower extremities, which would be accommodated by sedentary work.") (citing

R. at 208–17, 333–85, 464–98, 613–22, 950–58). Therefore, the Court finds that the ALJ did cite to material in support of his decision. *See Orn*, 495 F.3d at 630.

Finally, Plaintiff argues the fact that she worked as a babysitter for her grandchild is not evidence that she could perform sedentary work. (Doc. 16 at 15). Plaintiff notes that even the ALJ commented, during his examination of Plaintiff, that her work babysitting was not indicative a residual functional capacity because she could "lie down" and work within her range of disabilities. (R. at 35–36). Given the final decision's result, the ALJ plainly changed his mind during the deliberative process. Now the question is whether the ALJ's ultimate opinion, crystallized in the written decision, is supported by substantial evidence. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

In his written decision, the ALJ recognized that "babysitting allows for flexibility regarding breaks and lying down, [and yet] it appears that despite her impairments, the claimant has engaged in a somewhat normal level of daily activity and interaction." (R. at 18). This level of activity, the ALJ found, evidenced the "physical and mental capabilities requisite to performing many of these tasks replicate those necessary for obtaining and maintaining employment." (*Id.*) The record contains evidence that Plaintiff would assist her granddaughter with "normal daily care," help cook meals, take her two small dogs on walks. (R. at 209). The record also shows that Plaintiff complained of soreness in her back because she would lift the child while babysitting. (R. at 1030). It also contains evidence that her husband and son helped walk the dogs and that she could not stand for very long while cooking. (R. at 210).

The Court finds that the record with regard to Plaintiff's daily activities and babysitting is open to more than one reasonable interpretation. The evidence could show, as the ALJ reasonably concluded, greater functioning than Plaintiff testified to. However, the Court is certainly aware of and sympathetic to the fact that family obligations may call for sacrifices to one's own wellbeing. This, too, could explain Plaintiff's daily activities. However, when the facts are open to more than one reasonable interpretation, the Court must defer to the ALJ's interpretation. *Thomas*, 278 F.3d at 954. Such is the case here.

Of course, the ALJ assigned limited weight to Dr. Bebak's opinion not only because it was inconsistent with Plaintiff's work as a babysitter, but also because the opinion was "not fully supported by the medical evidence of record . . . ." (R. at 19). Dr. Bebak's opinion was supported, as the ALJ found, to the extent that Plaintiff "has conditions that cause her pain and limitations." (R. at 18). Nonetheless, the ALJ found that "the medical evidence of record shows frequently good response to treatment and the claimant's musculoskeletal pain appears to be concentrated primarily in the lower back and lower extremities, which would be accommodated by sedentary work." (*Id.*) The ALJ cited to several medical records to support this conclusion. As the ALJ noted, a June 2017 follow-up appointment with Dr. Sherman indicated a "70% improvement in pain" and that Plaintiff "was able to walk longer and father, and she no longer had leg pain," although she "continued to have some aching in the hips and right-sided low back pain." (R. at 17) (citing R. at 726). The ALJ also cited to a March 2018 document discharging Plaintiff from physical therapy because her overall symptoms had improved. (R. at 17) (citing R. at 852). The ALJ also cited notes form a July 2018 therapy record indicating that Plaintiff's condition had improved. (R. at 18) (citing R. at 988–1032). The Court finds this medical history, in connection with Plaintiff's work babysitting, provided substantial support for the ALJ's decision to assign limited weight to Dr. Bebak's opinion.

   ii. *Dr. Sherman*

Plaintiff's pain management specialist, Dr. Jason Sherman, opined in 2016 that Plaintiff's impairments precluded an eight-hour workday. (R. at 331). Specifically, Dr. Sherman opined that Plaintiff could sit for two hours, stand and walk for less than two hours, and only lift and carry less than ten pounds. (*Id.*) The ALJ assigned limited weight to the 2016 opinion because "it was written during the claimant's exacerbated knee pain caused by the meniscus tears, and prior to the claimant's knee surgery, which improved her knee pain." (R. at 20). After Plaintiff received knee surgery, Dr. Sherman wrote an opinion in 2018, saying that Plaintiff's impairments still precluded an eight-hour workday. (R. at 840). As before, Dr. Sherman opined that Plaintiff could sit for two hours, stand and

walk for less than two hours, and could only lift and carry less than ten pounds. (*Id.*)

The ALJ noted that Dr. Sherman, as Plaintiff's pain management provider was "uniquely qualified" to opine on the matter. (R. at 19). But the ALJ gave it less weight because "his opinion is not fully supported by the medical evidence of record." (*Id.*) The ALJ continued to explain his reasoning as follows:

> Although the record support a finding of standing/walking limitations, they do not appear to be of the extent opined by Dr. Sherman. At medical appointments clinical findings frequently included normal gait and normal strength in the lower extremities, and the claimant consistently reported good response to [epidural steroid injections]."

(*Id.*)

Plaintiff argues first that simply having a normal gait during medical appointments is irrelevant to the question of how Plaintiff would perform on an eight-hour workday. (Doc. 16 at 16). To the extent that Plaintiff argues she has standing and walking limitations, the Court notes the ALJ readily conceded this. (R. at 19). By noting Plaintiff's normal gait *and* her good response to treatment, the ALJ was properly addressing an apparent inconsistency between those records and Dr. Sherman's opinion that Plaintiff could only stand or walk for less than two hours. (*See e.g.*, R. at 15).

Second, Plaintiff argues her positive response to steroid injections was not sustained and ultimately resulted in knee and spinal surgeries. (Doc. 16 at 18). "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The record shows Plaintiff did have a consistently good response to steroid injections, with an exception occurring in September 2017. (R. at 15) (noting that Plaintiff claimed in June 2014 that September 2013 injection shad helped her pain greatly); (R. at 17) (noting that September 2016 injections had provided 70% relief for five months); (*Id.*) (noting that injection form September 2017 had provided 70% relief for only two days). But by and large, the record shows Plaintiff's impairments were historically controlled effectively by the injections. Therefore, the Court sees no reason to doubt the ALJ's observation of the same.

Likewise, Plaintiff argues that the fact that the opinion was written before the knee surgery is "not a legitimate reason to reject Dr. Sherman's 2016 assessment" because there were other sources of pain, in addition to knee pain, that prevented her from performing sedentary work. (*Id.*) The Court notes that the ALJ did not reject the 2016 assessment; he only assigned it limited weight because the surgery ultimately changed Plaintiff's condition by helping her knee pain. The ALJ may reject the opinion of a treating physician when it is contradicted by objective medical findings. *Batson*, 359 F.3d at 1195. Here, the record shows six months after the operation, Plaintiff told her rheumatologist the surgery had successfully reduced her knee pain. (R. at 16) (citing R. at 972).

   *iii.* *Dr. Hutchinson & Dr. Coleman*

Plaintiff also argues the ALJ failed to explain why, based on the medical record, he afforded moderate weight to non-treating physician opinions of Dr. Carol Hutchinson and Dr. Alan Coleman. (Doc. 16 at 18). Dr. Hutchinson's October 2016 opinion states that Plaintiff was limited to walking and standing for no more than two hours, although Plaintiff could sit for about six hours in an eight-hour workday. (R. at 66). Dr. Coleman had opined in February 2017 that Plaintiff could sit stand and walk for six hours out of an eight-hour workday. (R. at 82). The ALJ also noted these two physicians "have knowledge of the Social Security Administration's disability program and its criteria." (R. at 20); *see also* 20 C.F.R. 404.1527(c)(6) (a medical provider's "the amount of understanding of our disability programs" is a relevant factor "in deciding the weight to give to a medical opinion"). The ALJ explained his reasons to afford moderate weight as follows:

> The undersigned gave moderate weight to their opinions because they are generally consistent with the record as a whole, which shows functional limitations from the claimant's impairments. Less weight was given to the non-exertional limitations because the record shows limited complaints/treatment of upper extremity pain/limitations or poor response to environmental conditions.

(R. at 20).

As before, this language is given greater context when the ALJ's decision is read as a whole. On the prior page of the ALJ's decision, he had assigned moderate weight to the

opinion of Dr. Judy Panek, whose opinion is substantially similar to that of Dr. Hutchinson and Dr. Coleman. (R. at 19). Dr. Panek also opined that Plaintiff could stand or walk for at least two hours and sit for about six hours in an eight-hour workday. (R. at 79). The ALJ decided "[i]n consideration of the claimant's testimony at the hearing, the undersigned reduced the exertional level to sedentary to accommodate her back and lower extremity pain." (R. at 19). A reading of the whole decision shows the ALJ's gave Dr. Hutchinson and Dr. Coleman moderate weight because the record contained "limited complaints/treatment of upper extremity pain . . . ." (R. at 20).

### b. Rejecting Symptom Testimony

Plaintiff argues the ALJ erred by rejecting her symptom testimony. (Doc. 16 at 19). Provided that a claimant is not malingering, an ALJ may "reject the claimant's testimony about the severity of [the] symptoms" provided that the ALJ also explains her decision "by providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015). Plaintiff testified that, when seated, she suffered pain in her lower back and neck and that her fibromyalgia made it difficult to concentrate. (R. at 15, 42). The ALJ found as follows:

> [Plaintiff] is very limited by her severe degenerative disc disease and osteoarthritis, which are complicated by fibromyalgia, as indicated in the highly restrictive functional capacity found herein. However, the medical evidence of record does not support a finding that the combination of her impairments causes limitations beyond the sedentary exertional level or is as severe as to preclude the performance of her past work.
>
> While the record shows regular and consistent treatment of her conditions, particularly after 2016, the medical evidence of record shows frequently good response to treatment and the claimant's musculoskeletal pain appears to be concentrated primarily in the lower back and lower extremities, which would be accommodated by sedentary work. Moreover, the claimant has described everyday activities that include light household chores, shopping, and caring for her grandchildren fulltime . . . .

(R. at 18).

The ALJ did not discredit the entirety of Plaintiff's testimony. (*See e.g.*, R. at 19) (citing Plaintiff's testimony to reject part of Dr. Panek's opinion). Instead, the ALJ

discredited the part of her testimony indicating that she was unable to perform work at a sedentary level. As to the medical evidence, the ALJ cited Plaintiff's positive response to steroid injections and also discussed the three medical opinions that indicated Plaintiff was capable of work at a sedentary level. (R. at 20). The ALJ also cited evidence of Plaintiff's daily activities. (R. at 15). The Court finds that the medical evidence presents clear and convincing reasons for finding Plaintiff is capable of work at a sedentary level. The Court has already discussed the ambiguity present in the record of Plaintiff's daily activities as a babysitter, and it finds that it lends some support to the ALJ's decision to reject Plaintiff's testimony.

## IV.  Conclusion

Overall, the Court finds that the ALJ did not err in his decision, which is based on substantial evidence. *See Orn*, 495 F.3d at 630.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly.

Dated this 20th day of August, 2021.

Honorable Diane J. Humetewa
United States District Judge